UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL W. HICKS,

                             Plaintiff,

                v.

WELLS FARGO BANK, N.A.,

                          Defendant.

_____

<u>DECISION AND ORDER</u>

19-CV-6253L


       Plaintiff Michael W. Hicks brought this action on April 4, 2019, against defendant Wells Fargo Bank, N.A. ("Wells Fargo").  Plaintiff filed an amended complaint ("Complaint") as of right on April 5, 2019 (Dkt. #4).  Plaintiff seeks damages and declaratory and injunctive relief, under federal and New York law, in connection with a mortgage loan on property owned by plaintiff.  Wells Fargo has moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.


**BACKGROUND**


**I. Facts**

       According to the complaint, in 1999, certain property ("Property") was deeded to plaintiff and his wife by plaintiff's in-laws.  In September 2004, plaintiff executed a note and a mortgage (collectively "Loan") to secure the note in favor of non-party Argent Mortgage Company LLC.

In November 2014, the Loan was transferred to non-party U.S. Bank N.A. ("U.S. Bank"). Plaintiff alleges that "[a]t some point ... Wells Fargo became the servicer of the Loan." Complaint ¶ 12.

By his own admission, plaintiff defaulted on the loan, due to what he describes as "unavoidable economic hardships ... ."  Complaint ¶ 15.  In July 2018, U.S. Bank commenced a foreclosure action against plaintiff in New York State Supreme Court, seeking to foreclose on the Property.  Complaint ¶ 17.

The Complaint alleges, and both parties agree, that plaintiff submitted a loan modification application to Wells Fargo on or about October 16, 2018.  *See* Complaint Ex. B.  Wells Fargo denied the application by letter dated October 25, 2018.  *See* Complaint Ex. C.

Hicks responded to the denial letter by letter from counsel dated November 1, 2018, which counsel characterized as an "Appeal, Notice of Error ..., as well as a Request for Information ... ."  Complaint Ex. D.  In the letter, Hicks's attorney asserted that Wells Fargo's denial letter was insufficient in certain respects, and that Wells Fargo's stated reasons for denial of his initial request were faulty.

Further correspondence ensued.  In short, plaintiff alleges that Wells Fargo has failed to respond, or has inadequately responded, to plaintiff's various assertions and requests.  Plaintiff alleges that this has caused damage to him and his family, consisting mostly of emotional distress.  Complaint ¶ 42.

The Complaint asserts four claims:  (1) a claim alleging a violation of 12 C.F.R. § 1024.35(d), which provides that "[w]ithin five days ... of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging

receipt of the notice of error"; (2) a claim alleging a violation of 12 C.F.R. § 1024.35(e), which generally relates to a servicer's duties to respond to a notice of error; (3) a claim alleging a violation of N.Y. Gen. Bus. L. § 349, concerning deceptive business practices; and (4) a claim alleging violation of defendant's duty of good faith under N.Y. C.P.L.R. § 3408, and "Regulation X," which was promulgated by the Department of Housing and Urban Development to implement the Real Estate Settlement Procedures Act ("RESPA"), *see* Nat'l Credit Union Admin., "Real Estate Settlement Procedures Act (Regulation X)," *available at* https://www.ncua.gov.[1]  In his claim for relief, plaintiff seeks actual, statutory and punitive damages, in an unspecified amount.  Plaintiff also requests a declaration that defendant's "abusive collection practices ... violate the law," and an injunction against "any further action within the underlying foreclosure and/or sale of the property ... ."  Complaint at 16.

## II. Defendant's Motion

### A. Matters Outside the Pleadings

In support of its motion, Wells Fargo contends that plaintiff has omitted certain key documents that bear upon the underlying dispute.  Defendant has submitted copies of those documents.  *See* Declaration of Joseph S. Jacobs (Dkt. #9), and exhibits attached thereto.

To the extent that those documents relate to defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may consider them.

---

[1] RESPA's implementing regulations are collectively known as "Regulation X."  *Naimoli v. Ocwen Loan Servicing, LLC*, __ F.Supp.3d __, 2020 WL 2059780, at *4 (W.D.N.Y. 2020), *appeal filed*, (2d Cir. May 28, 2020).

Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction, ... where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted). *See also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings") (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

In addition, "the Court may take judicial notice of documents retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015)).

In the case at bar, the Court has learned, from the Monroe County Clerk's website that on October 29, 2019, the underlying mortgage foreclosure action was discontinued, on motion of the plaintiff in that action, U.S. Bank. *See U.S. Bank Nat'l Ass'n v. Hicks*, No. E2018005412, Dkt. #26, *available at* https://iapps.courts.state.ny.us/nyscef/.  In support of the motion, U.S. Bank's attorney submitted an affirmation in the state court stating that he had been "advised that a

-4-

settlement was reached between the parties as to the mortgage default herein, as a result of a loan modification."  *Id.* Dkt. #25.[2]

### B. Defendant's Motion to Dismiss for Failure to State a Claim[3]

### 1. Claims Under 12 C.F.R. § 1024.35

Wells Fargo contends that the Complaint should be dismissed for failing to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

Before reaching that issue, the Court must address whether there is even a live claim here, in light of the fact that the underlying foreclosure action in state court has been discontinued.  To the extent that plaintiff's complaint in this action asks the Court to "enjoin any further action

_____

[2] It is troubling that counsel in this case failed to advise the Court of the settlement of the underlying mortgage foreclosure action.  That settlement occurred six months after the complaint was filed in this action, and after all the papers had been filed on defendant's motion to dismiss.  It was only because this Court undertook to search the state court records that the Court was even aware of this significant fact.  *See Board of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) ("It is appropriate to remind counsel that they have a 'continuing duty to inform the Court of any developments that may conceivably affect the outcome' of the litigation") (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1985) (Burger, C.J., concurring)).

[3] In its motion to dismiss (which was filed while the state foreclosure action was pending), the first argument advanced by Wells Fargo is that the Court should abstain from exercising jurisdiction over this case under the doctrines set forth by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

While jurisdiction is a threshold question, it calls for little discussion here.  Both *Younger* and *Colorado River* abstention presume the pendency of an ongoing proceeding in state court.  *See Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000); *National Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

Neither doctrine applies here now, since the underlying foreclosure action has been discontinued and is no longer pending.  Thus, there is no underlying state judicial proceeding to be interfered with.  *See Lloyd v. Pluese, Becker, & Saltzman, LLC*, Civ. No. 18-9420, 2019 WL 6113859, at *4 (D.N.J. Nov. 18, 2019) (concluding that *Younger* did not apply where the underlying state foreclosure proceeding had been administratively dismissed); *401 North Charles, LLC v. Sonabank*, No. 17-0872, 2018 WL 1115677, at *3 (D.Md. Feb. 26, 2018) ("Because the state foreclosure action has been dismissed, there is no longer a pending action that would implicate the *Younger* or *Colorado River* abstention doctrines"); *Bianchetti v. JPMorgan Chase Bank, N.A.*, No. 15–4107, 2016 WL 1262458, at *1 (D.N.J. Mar. 31, 2016) ("[S]ince the state foreclosure action was dismissed, Defendants have failed to demonstrate that the state foreclosure action qualifies as an ongoing proceeding warranting *Colorado River* abstention") (footnote omitted).

within the underlying foreclosure action and/or sale of the Property," Dkt. #4 at 16, that request is moot.

Plaintiff has also requested actual, statutory, and punitive damages. *Id.* Plaintiff's conclusory, rote allegations of "stress and emotional distress" occasioned by Wells Fargo's alleged violations, *see id.* ¶ 48, are insufficient to make out a facially valid claim for damages. *See Bukowski v. Wells Fargo Bank, N.A.*, 757 Fed.Appx. 124, 128 (3d Cir. 2018) ("Even assuming, *arguendo*, that Wells Fargo violated RESPA by failing to respond to the Bukowskis' written submissions, the Bukowskis' complaint fails to plead facts sufficient to recover either actual or statutory damages"). Nor do I see a basis for statutory damages. *See infra* n.5 and accompanying text.

Aside from that defect, plaintiff's claims fail on the merits, as he has not shown, even at the pleading stage, a RESPA violation by Wells Fargo.

As to the first cause of action, for failure to acknowledge receipt of a notice of error ("NOE"), the relevant regulation, 12 C.F.R. § 1024.35(d), provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." The second cause of action is based on 12 C.F.R. § 1024.35(e)(1)(i), which provides that with certain exceptions, "a servicer must respond to a notice of error" by, *inter alia*, correcting the error, or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes ... a statement of the

borrower's right to request documents relied upon by the servicer in reaching its determination ... ."[4]

Wells Fargo contends that plaintiff's complaint is based on a misrepresentation of the facts and is contradicted by the relevant documents.  In support of that assertion, Wells Fargo has submitted copies of documents that are not contained in, or attached to, the complaint.

Although a court deciding a motion to dismiss under Rule 12(b)(6) is generally limited to what is contained within the four corners of the complaint, that is not an ironclad rule.  The court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, documents that, although not incorporated by reference, are "integral" to the complaint, or any matter of which the court can take judicial notice for the factual background of the case.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

A plaintiff–particularly one whose claims are grounded on documents, such as written correspondence between him and the defendant–cannot defeat a Rule 12(b)(6) motion simply by cherry-picking "helpful" documents to cite in the complaint, while deliberately ignoring other relevant documents that might tend to undercut his claims.  *See id.* ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim–and that they

---

[4] There is divergent authority among the courts as to whether there is a private right of action for alleged violations of § 1024.35.  *See Self v. Nationstar Mortgage LLC*, No. __, 2019 WL 4734412, at *10 (E.D.N.C. Sept. 26, 2019) (noting that "[c]ourts disagree about whether RESPA and section 1024.35 create a private right of action for alleged violations of section 1024.35," but finding it unnecessary to decide the issue) (citing cases); *Sutton v. CitiMortgage, Inc.*, 228 F.Supp.3d 254, 270-71 (S.D.N.Y. 2017) (same).  Since Wells Fargo does not appear to contend that plaintiff is barred from asserting a claim for an alleged violation of that regulation, and since plaintiff's claim would fail regardless, as explained in the body of this Decision and Order, I likewise find it unnecessary to reach that issue.  *See Gresham v. Wells Fargo Bank, N.A.*, 642 Fed.Appx. 355, 359 n.16 (5th Cir. 2016) (noting that court in *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) held that § 1024.35 does not provide a private right of action for damages, but finding it unnecessary to reach issue, since plaintiff had not supported his claim with any facts).

apparently most wanted to avoid–may not serve as a means of forestalling the district court's

decision on [a 12(b)(6) ] motion") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

44 (2d Cir. 1991)).  *See also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (plaintiff may

not "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document

that prove[s] his claim has no merit"); *Pension Benefit Guaranty Corp. v. White Consolidated

Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could

survive a motion to dismiss merely by failing to attach a dispositive document on which it

relied") (citations omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("a district

court ruling on a motion to dismiss may consider a document the authenticity of which is not

contested, and upon which the plaintiff's complaint necessarily relies") (citing *Cortec*, 949 F.2d

at 47).

    In the case at bar, plaintiff does not expressly deny the authenticity of the documents

submitted by Wells Fargo.  He states only that "Given the Defendant's Motion contains a series

of easily correct misstatements of fact, [sic] Plaintiff has no further confidence that the alleged

response to (solely) the November 1, 2018 Notice of Error was generated, mailed, or delivered

when claimed by the Defendant."  Plaintiff's Mem. (Dkt. #12-1) at 17.  Beyond that cryptic

statement, plaintiff simply asserts that the complaint states a facially valid claim.

    Plaintiff's claim rests upon the alleged inadequacy of Wells Fargo's responses to his

requests.  His statement that he lacks "confidence" in the authenticity of the documents submitted

by Wells Fargo hardly provides a basis for the Court to ignore relevant documents that have been submitted by defendant.

In that regard, I note that the Complaint alleges that "Plaintiff, through counsel, sent Notices of Error to Wells Fargo on or about November 1, 2018, November 20, 2018, and December 11, 2018." (Dkt. #4 at 9, ¶ 43).[5]  The December 11 letter, a copy of which has been submitted by defendant, is signed by plaintiff's counsel, and expressly references–indeed, attaches as an exhibit–Wells Fargo's December 3, 2018 response to plaintiff's November 20 letter.  *See* Dkt. #9-6.  Plaintiff does not deny that he signed and sent the December 11 letter, and presumably he does not lack "confidence" in its authenticity.

Wells Fargo has also submitted a copy of a letter from its attorney to plaintiff's counsel, dated July 8, 2019 (Dkt. #9-8), pointing out plaintiff's omission of several relevant documents, asserting that plaintiff was "engaging in frivolous litigation," and demanding that plaintiff withdraw the complaint.  In an e-mail reply, (the authenticity of which is not challenged by plaintiff's counsel), plaintiff's attorney responded, *in toto*:  "Wow.  My only response would be for you to re-read the complaint, or feel free to file something regarding this as I would love the judge to decide who is wasting their time."  (Dkt. #9-9.)

As is now evident, Wells Fargo has "file[d] something regarding this."  Since it appears that plaintiff has carefully excised from his pleadings the relevant documents submitted by defendant, and because I find no reason to doubt their authenticity, the Court will consider them in deciding the motion to dismiss.

---

[5] Inexplicably, the numbered paragraphs of the complaint go from 1 to 47, then to 42 and back up again. The reference here is to the "second" paragraph 43.

The documentary evidence, as fleshed out by defendant's exhibits, shows that plaintiff and Wells Fargo engaged in a series of correspondence.  The relevant timeline follows.

| Date | Document |
|------|----------|
| Oct. 16, 2018 | Plaintiff's Application for Loan Modification (Complaint Ex. A) |
| Oct. 25, 2018 | Wells Fargo's Letter Denying Plaintiff's Application (Complaint Ex. C) |
| Nov. 1, 2018 | Plaintiff's Letter Appealing Denial and Purported NOE (Complaint Ex. D) |
| Nov. 5, 2018 | Wells Fargo's Letter Acknowledging Receipt of Nov. 1 Letter (Dkt. #9-3) |
| Nov. 8, 2018 | Wells Fargo's Letter Advising Plaintiff that his Appeal was Denied (Complaint Ex. E) |
| Nov. 20, 2018 | Plaintiff's Letter to Wells Fargo Asserting Insufficiency of Wells Fargo's Nov. 8 Letter (Complaint Ex. F) |
| Nov. 20, 2018 | Wells Fargo's Letter Advising Plaintiff's Counsel that a "Thorough Response" to Nov. 1 Letter Would Be Forthcoming by December 5 (Dkt. #9-4) |
| Dec. 3, 2018 | Wells Fargo's Response to November 1 Letter (Dkt. #9-5) |
| Dec. 11, 2018 | Plaintiff's Letter Challenging Sufficiency of Wells Fargo's Dec. 3 Letter (Dkt. #9-6) |

Plaintiff's first cause of action alleges that plaintiff sent NOEs to Wells Fargo on November 1, November 20, and December 11, 2018.  Complaint ¶ 43.  Plaintiff further alleges that defendant failed to properly acknowledge those NOEs within the time required by 12 C.F.R. § 1024.35(d), which provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

Having reviewed these documents, the Court finds that a fundamental flaw in plaintiff's claims is that the three letters in question were not NOEs to begin with.  "Notice of error" is not a generic term, but a term of art that is expressly defined in 12 C.F.R. § 1024.35.  Subsection (a) states that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes [certain information, including] the error the borrower believes has occurred.  ... A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section."

Section § 1024.35(b) provides in turn that "the term 'error' refers to [certain specified] categories of covered errors," mostly relating to payments and fees.  The regulation also contains a catch-all provision, covering "[a]ny other error relating to the servicing of a borrower's mortgage loan .. ."  12 C.F.R. § 1024.35(b)(11).

RESPA defines "servicing" as:

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).  *See also* 12 C.F.R. § 1024.2(b) (defining "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan ... and making the payments to the owner of the loan or other third parties of principal and interest ...").

Each of plaintiff's November 1, November 20 and December 11 letters to Wells Fargo purported to be, or to include, a notice of error.  *See* Dkt. #4-5 at 2, #4-7 at 1, #9-6 at 1.  Each of them also expressly referenced 12 C.F.R. §§ 1024.35(b)(3) and (b)(5).  Those subsections

provide, respectively, that the term "error" includes "[f]ailure to credit a payment to a borrower's mortgage loan account as of the date of receipt" and "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." Plaintiff's letters, which mostly focus on his assertions that Wells Fargo had not provided specific enough reasons for denying plaintiff's application, and that Wells Fargo had incorrectly calculated plaintiff's monthly income, did not explain the basis for citing those subsections, nor is any such basis apparent.

The letters also (mis)quoted, without explicitly citing, the catch-all provision of § 1024.35(b)(11), covering "[a]ny other error relating to the servicing of a borrower's mortgage loan." In each letter, counsel asserted that "Hicks considers all the reasons given for the above appeal to be errors in servicing ... ." Dkt. #4-5 at 3, #4-7 at 2, #9-6 at 2.

The case law makes clear that not every written statement in which a borrower raises objections or concerns about something that a servicer has done or failed to do constitutes a notice of error concerning "servicing" under the catch-all provision of subsection (b)(11). Rather, a "[p]laintiff must identify a 'covered error' to sustain [a] § 1024.35(e)(1) claim." *Naimoli v. Ocwen Loan Servicing, LLC*, __ F.Supp.3d __, 2020 WL 2059780 at *6 (W.D.N.Y. Apr. 29, 2020); *accord Tanasi v. CitiMortgage, Inc.*, 257 F.Supp.3d 232, 268 (D.Conn. 2017). Simply saying that one is alleging an "error in servicing" does not make it so.

Plaintiff's missives to Wells Fargo did not identify any errors in Wells Fargo's servicing of plaintiff's loan. His November 1 letter asserted that Wells Fargo had not stated sufficiently specific reasons for denying plaintiff's request for loan modification, based on applicable loss mitigation rules of the Consumer Financial Protection Bureau. (Dkt. #4-5 at 2.) He also asserted that Wells Fargo had erroneously calculated his income. *Id.* Plaintiff's November 20 and

December 11 letters did little more than repeat those assertions.  Neither in his letters to Wells

Fargo nor in the complaint before this Court has plaintiff identified an error in servicing, and he

thus has no basis for relying on § 1024.35(b)(11).

As to the substance of plaintiff's objections, courts in this circuit and elsewhere have held

that "errors in evaluation of loss mitigation options are not subsumed by [the] catch-all

provision." *Sutton v. CitiMortgage, Inc.*, 228 F.Supp.3d  254, 272 (S.D.N.Y. 2017).  *See also*

*Naimoli*, 2020 WL 2059780, at *7 ("courts have found errors relating to loss mitigation

applications as falling outside the scope of § 1024.35(b)(11)'s catch-all provision") (citing

cases).

To the extent that plaintiff complained about the alleged inadequacy of Wells Fargo's

responses to his various requests, his letters also did not constitute NOEs.  "Courts have

repeatedly held that requests for information related to loan modifications do not concern

'servicing' ... ." *Sharma v. Rushmore Loan Mgt. Servs., LLC*, __ F.Supp.3d __, 2020 WL

1323007, at *13 (D.Md. Mar. 20, 2020) (citing *Nash v. PNC Bank, N.A.*, No. TDC-16-2910,

2017 WL 1424317, at *5 (D. Md. Apr. 20, 2017) (collecting cases)).

Thus, the three letters upon which plaintiff relies were not NOEs, and as such they did not

trigger the requirements of § 1024.35(d).

In addition, as the above chronology shows, Wells Fargo did timely acknowledge receipt

of plaintiff's November 1 letter, so even if that letter could be deemed a notice of error, Wells

Fargo met its obligations in that regard.

Even though on their face plaintiff's November 20 and December 11 letters each also

purported to be a notice of error, *see* Dkt. #4-7 at 1, #9-6 at 1, they were in fact simply

-13-

reiterations of plaintiff's prior assertions contained in his initial application and in the November

1 letter.  The November 20 letter simply asserted, in essence, that Wells Fargo should not have

denied plaintiff's appeal, for the reasons stated in that appeal.  The December 11 letter did

likewise.  The letters' boilerplate language that each of them should be "considered a Notice of

Error" did not transform them into such.  Were the rule otherwise, a borrower could send an

endless stream of letters to the servicer, and create a perpetual series of claims for failure to

respond to NOEs.

The second cause of action is based on 12 C.F.R. § 1024.35(e)(1)(i), which provides that

with certain exceptions, "a servicer must respond to a notice of error" by either "[c]orrecting the

error or errors identified by the borrower and providing the borrower with a written notification

of the correction" and other specified information, or by

> [c]onducting a reasonable investigation and providing the borrower with a written
> notification that includes a statement that the servicer has determined that no error
> occurred, a statement of the reason or reasons for this determination, a statement of the
> borrower's right to request documents relied upon by the servicer in reaching its
> determination, information regarding how the borrower can request such documents, and
> contact information, including a telephone number, for further assistance.

With some narrow exceptions plainly inapplicable here, such response must be sent no later than

30 days after the servicer's receipt of the NOE.

This claim fails on several grounds.  First, as explained above, plaintiff's letters were not

NOEs.

Second, even assuming *arguendo* that the November 1 letter could be deemed a notice of

error, Wells Fargo did respond, as required by the regulation.  In its December 3, 2018 letter

(plaintiff's receipt of which was acknowledged by plaintiff's counsel, as stated above), Wells

Fargo stated, in response to plaintiff's counsel's November 1 letter, that Wells Fargo had determined that "no error has occurred," accompanied by an explanation of its easons for reaching that conclusion.  The December 3 letter also contained additional information concerning how plaintiff could proceed if he sought additional information.  (Dkt. #9-5.)

While Wells Fargo's decision may not have been to plaintiff's liking, plaintiff has not alleged facts showing that Wells Fargo's response was inadequate under the applicable regulations.  All plaintiff has done is repeat his conclusory allegations that Wells Fargo failed to conduct a "reasonable" investigation, and that it provided "faulty justifications for its erroneous conclusions."  Complaint ¶ 54.  If that were all it took to make out a claim, then every aggrieved applicant could do so, on like grounds.  The regulations upon which plaintiff's claims are based are not so broad as to permit that, however.

The Court also notes that considerable portions of both the complaint and plaintiff's motion papers are devoted to matters that do not directly relate to his own claims.  The complaint, for example, goes on at some length describing how "Wells Fargo has recently been accused of a string of notorious wrongdoing" involving other borrowers.  Complaint ¶¶ 43-46.  In a similar vein, plaintiff's response to defendant's motion asserts that the "Complaint is strife [sic] with examples of alleged deceptive behavior on the part of Wells Fargo ... ."  (Dkt. #12-1 at 17.)  Rather astonishingly, plaintiff also accuses *defendant* of "reliance on vitriol [sic] language ... ."  *Id.*  Such bluster notwithstanding, plaintiff has failed to present allegations sufficient to state a facially valid claim under § 1024.35.[6]

_____

[6] I recognize that to obtain statutory damages under RESPA, a plaintiff must establish "a pattern or practice of noncompliance" with its requirements by the defendant.  12 U.S.C. § 2605(f)(1).  But that does not mean that a plaintiff can salvage a meritless claim simply by alleging that other individuals have accused the defendant of

## 2. Claims under State Law

Plaintiff's third cause of action alleges a violation of New York General Business Law § 349, which makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state ... ."  The fourth cause of action alleges a violation of defendant's duty of good faith under N.Y. C.P.L.R. § 3408(f).

As a general principle, when a plaintiff has asserted both federal and state law claims, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (quotation omitted); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims").

I see no reason to depart from that principle here.  From a procedural standpoint, this case remains in its early stages, and there is no sound reason for this Court to decide plaintiff's claims under state law, in the absence of any viable federal claims.  *See Naimoli*, __ F.Supp.3d at __, 2020 WL 2059780, at *16-*17 (having found that plaintiff's RESPA claims were not viable, court declined to exercise supplemental jurisdiction over the plaintiff's state law claim under GBL § 349); *Sutton*, 228 F.Supp.3d at 276-77 (same).

I also note that plaintiff's fourth cause of action appears to be an amalgam of a state-law claim and a claim for an ill-defined breach of "standard servicer duties" under federal law.  *See* Complaint ¶¶ 73-77.  To the extent that this claim is premised on alleged violations of federal

wrongdoing in the past.  *See Sutton*, 228 F.Supp.3d at 264-65.

law, it is dismissed on the merits, for the reasons stated with respect to the first and second causes of action.

## CONCLUSION

Defendant's motion to dismiss (Dkt. #8) is granted.  Plaintiff's first and second causes of action are dismissed with prejudice.  To the extent that plaintiff's fourth cause of action asserts a claim under federal law, it is also dismissed with prejudice.

Plaintiff's third and fourth causes of action (to the extent that they do not assert claims under federal law) are dismissed without prejudice to whatever remedies may be available to plaintiff in state court.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        June 15, 2020.

-17-